The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with some modification to provide for payment of temporary total disability compensation.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with Alexsis, Inc., as the servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an admittedly compensable injury on October 28, 1997.
5. Plaintiffs average weekly wage was $370.00, which yields a compensation rate of $246.68 per week.
6. The issues to be determined concern plaintiffs temporary total disability compensation for the period from October 7, 1998 through July 12, 1999 and payment for plaintiffs permanent partial disability rating to plaintiffs right arm.
7. The parties stipulated the following documents into the record:
 a. I.C. Forms 18, 33 (two), 33R, and Agreement to Transfer plaintiff to Dr. Barrons care, and
 b. Medical records of Dr. Allen Smith, Dr. Robert Hart, Dr. C. Michael Nicks, and Dr. Jerry Barron.
8. Dr. Barron recommended that plaintiff undergo a second MRI for his right shoulder on or about March 30, 2000. At the hearing before the Deputy Commissioner defendant agreed to authorize this diagnostic test.
9. By stipulation of the parties during oral arguments before the Full Commission, the record in this case was reopened to receive into evidence Dr. Barrons medical records dated June 8, 2000 and November 11, 2000.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with a few modifications and finds as follows:
 FINDINGS OF FACT
1. Prior to 1997, plaintiff underwent treatment for L5-S1 problems and a coronary artery bypass surgery. Since 1997, Dr. Allen Smith has treated plaintiff for pre-existing vascular problems, which included surgery on the carotid artery.
2. At the time of the compensable injury, plaintiff had been employed with defendant for six months as a spray operator in the finishing room.
3. On October 28, 1997, plaintiff and a coworker lifted a sofa frame weighing approximately two hundred pounds. When the coworker dropped his end of the frame, plaintiffs right shoulder and arm were jerked downward.
4. Plaintiff reported this injury to his employer and was referred to Hart Industrial Clinic. On October 29, 1997 Dr. Robert Hart diagnosed plaintiff with a right shoulder sprain and restricted him to a ten to fifteen pound lifting limit with no overhead lifting.
5. After plaintiff continued to have pain in his right shoulder, defendant referred him to Dr. Michael Nicks in December of 1997. Dr. Nicks found plaintiff to have an acute rupture of the longhead biceps for which he ordered physical therapy.
6. On November 3, 1997 plaintiff injured his back when he slipped and fell on icy steps at home. He was taken out of work due to his back condition as of November 3, 1997 by Dr. Smith. Plaintiff was on medical leave of absence from defendant-employer due to his back condition from November 3, 1997 until his termination from defendant-employer, the date of which is unclear from the record.
7. Following an MRI of plaintiffs shoulder, Dr. Nicks recommended surgery in January of 1998. However, plaintiff decided to postpone treatment for his shoulder because of pending back surgery.
8. On February 5, 1998, Dr. Smith excused plaintiff from work due to his back problems. Dr. Smiths return to work form states that it was unknown on what date plaintiff could return to work and that plaintiff would be reevaluated in two weeks. The visit to Dr. Smith on February 5, 1998 appears from the record to have been the last time plaintiff saw Dr. Smith. Plaintiffs back condition subsequently was treated by Dr. David Kelly and, at the time of the hearing before the Deputy Commissioner, by Dr. Williams in Charlotte. Plaintiffs doctors who were treating his back condition never released him to return to work and he receives Social Security disability benefits because of his back injury.
9. On March 10, 1998, plaintiff returned to Dr. Nicks and indicated that he had decided he wanted to have his shoulder repaired and he would delay his back surgery. An MRI was performed and revealed degenerative changes in the AC joint with an inferior osteophyte and increase signal and thickening or supraspinatus consistent with tendonitis. In October of 1998, plaintiff was referred to orthopedic surgeon Dr. Jerry Barron at The Miller Clinic for a second opinion on the surgery. Plaintiff did not keep scheduled appointments with Dr. Barron in late October and November of 1998.
10. On February 10, 1999, defendant authorized Dr. Barron as plaintiffs treating physician. After diagnostic testing and evaluation, Dr. Barron recommended right shoulder surgery.
11. On April 12, 1999, Dr. Barron performed arthroscopic surgery on plaintiffs right shoulder with debridement of the rotator cuff, open AC resection, and an open acromioplasty.
12. Dr. Barron excused plaintiff from work due to his shoulder conditions from October 7, 1998 through September 9, 1999. A functional capacity evaluation was performed pursuant to Dr. Barrons orders on August 26, 1999. Thereafter, based upon the results of the FCE, on September 9, 1999 Dr. Barron released plaintiff to return to medium level work with restrictions of occasional lifting fifty pounds to the waist level, thirty pounds to shoulder level, and ten pounds overhead. Dr. Barron recommended vocational rehabilitation if defendant had no work within these restrictions.
13. By June 8, 2000, Dr. Barron changed plaintiffs restrictions to twenty-five pounds lifting to the waist, ten pounds to shoulder level and no overhead lifting.
14. Dr. Barron initially assigned a ten percent permanent partial impairment rating to plaintiffs right arm on September 9, 1999. This rating was amended on a Form 25R dated November 1, 2000. Based upon the amended rating, the Commission finds that plaintiff retains a fifteen percent permanent partial impairment to his right arm as a result of the right shoulder injury.
15. As a result of the compensable shoulder injury by accident, plaintiff was disabled and unable to earn wages in any employment from October 7, 1998 through September 9, 1999 when Dr. Barron released plaintiff to return to work. Any disability thereafter is the result of plaintiffs noncompensable back injury.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On October 28, 1997 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. As a result, plaintiff sustained injury to his right shoulder. N.C. Gen. Stat. 97-2(6).
2. As a result of plaintiffs compensable injury by accident, plaintiff was unable to earn wages in any employment and was totally disabled from October 7, 1998 through September 9, 1999 and is entitled to temporary total disability compensation at the rate of $246.68 per week during this period. N.C. Gen. Stat. 97-29.
3. As a result of the compensable injury by accident, plaintiff is entitled to permanent partial disability compensation at the rate of $246.68 per week for thirty-six weeks for the fifteen percent permanent functional impairment to his arm. N.C. Gen. Stat. 97-31(13).
4. Subject to the limitations of N.C. Gen. Stat. 97-25.1, plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $246.68 per week for the period from October 7, 1998 to September 9, 1999. Said amount shall be paid in a lump sum subject to an attorneys fee approved in Paragraph 4.
2. Defendant shall pay plaintiff compensation at the rate of $246.68 per week beginning September 10, 1999 for thirty-six weeks as compensation for the fifteen percent permanent functional impairment to his arm. Said amount shall be paid in a lump sum subject to an attorneys fee approved in Paragraph 4.
3. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable shoulder injury.
4. A reasonable attorneys fee of twenty-five percent of the compensation awarded to plaintiff in Paragraphs 1 and 2 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel.
5. Defendant shall pay the costs due this Commission.
This the ___ day of May 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER